IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 15-553 |
| GEORGE SMITH | : | |

**MEMORANDUM**

**SURRICK, J.** **SEPTEMBER 9 , 2016**

Presently before the Court is Defendant's Post-Trial Motion for Judgments of Acquittal. (ECF No. 84.) For the following reasons, the Motion will be denied.

## I. BACKGROUND

On June 30, 2016, a jury found Defendant George Smith ("Defendant") guilty of two counts of robbery (Counts One and Three), in violation of 18 U.S.C. § 1951(a). Defendant was found not guilty of one count of attempted robbery (Count Two). Defendant moves for judgments of acquittal under Federal Rule of Criminal Procedure 29 on Counts One and Three of the Indictment.

### A. Factual Background

On Thursday, August 20, 2015, at approximately 10:29 p.m., a black male armed with a large silver revolver entered the Pizza Hut located at 2916 N. Broad St., wearing a black cap and sunglasses. (June 28, 2016 Trial Tr. 15-17, ECF No. 80; Gov't Ex. 104.) The man pointed the gun at the manager of the restaurant and demanded all of the money in the cash register. (June 28 Trial Tr. 15.) The robber was given $262. He fled on foot. (*Id.* at 18-19.)

On August 24, 2015, at approximately 4:33 a.m., a black male armed with a large silver revolver entered the 7-Eleven located at 2042 N. Broad St., wearing a red cap and sunglasses, and carrying a black plastic bag. (*Id.* at 51-52, 54; Gov't Ex. 105.) The man pointed the gun at an employee in the store and demanded all of the money in the cash registers. (June 28 Trial Tr. 51.) The robber also demanded that another employee fill a bag with Newport cigarettes. (*Id.* at 51, 59.) The robber was given the Newport cigarettes in a plastic 7-Eleven bag along with approximately $700 in cash. He fled on foot. (*Id.* at 51, 62.) Shortly after the robbery, the employees notified the police. (*Id.* at 76.)

After receiving a flash broadcast describing the robbery suspect, two Allied Barton security guards working for Temple University observed Defendant walking approximately three blocks from the site of the robbery. (*Id.* at 92.) The security guards followed Defendant, who was carrying a "tannish-gray 7-Eleven bag" and acting suspiciously. (*Id.* at 102.) The security guards saw Defendant stop and talk to a woman who had been trailing him on a bicycle. (*Id.* at 95.) The woman was carrying a black plastic bag. (*Id.* at 97, 123.) After trailing the couple and observing more suspicious behavior, including what appeared to be an exchange of clothing and bags, the security guards notified Temple University police officers. (*Id.* at 102-05; Gov't Ex. 407.) Defendant was subsequently stopped by the police. (June 28 Trial Tr. 105.) Before he was stopped, Defendant dropped the black plastic bag on the street next to where he was walking, between a parked car and the curb. Defendant was stopped by Temple police officers a short distance from where he dropped the bag. The bag was retrieved by a Temple police officer. The bag contained a red baseball cap, a large silver revolver, sixteen boxes of unopened Newport cigarettes, two cellphones, one black t-shirt, one lighter, $67 in U.S. currency, and a

plastic 7-Eleven bag. (*Id.*; Gov't Exs. 619-21.) Defendant was then arrested and taken into custody.

Several hours after Defendant's arrest, Detective Ralph Domenic and his partner, Detective James Waring, conducted an investigation to determine whether the 7-Eleven robbery was part of a series of gunpoint robberies that had occurred in the area. (June 28 Trial Tr. 185-86.) The investigation lasted approximately five hours. (*Id.* at 186.) In the afternoon of August 24th, the detectives moved Defendant from his holding cell to a special investigations office. (*Id.*) Detective Domenic then gave Defendant his *Miranda* warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). He also assessed Defendant's understanding of the warnings through a series of formalized questions. (June 28 Trial Tr. 187-92.)

After Defendant knowingly and voluntarily waived his *Miranda* rights and agreed to speak with the detectives, he was questioned for approximately 35 minutes about a number of robberies that had occurred in the area. (*Id.* at 187, 192; June 29, 2016 Trial Tr. 161, ECF No. 81.) During the questioning, Defendant admitted to the detectives that he had been involved in the Pizza Hut robbery and the 7-Eleven robbery.[1] (June 28 Trial Tr. 192; June 29 Trial Tr. 160.) The detectives memorialized Defendant's admissions by conducting a formal written interview. (June 28 Trial Tr. 193; *see also* Gov't Ex. 626.) Before beginning the formal interview, Detective Dominic again asked Defendant whether he had been advised of his rights and, if so, whether he had waived those rights. (June 28 Trial Tr. 199.) Defendant answered "yes" to both questions. (*Id.*) At the conclusion of the interview, Defendant was asked to read each page of the written interview and to correct any errors. (*Id.* at 204.) Defendant reviewed the document

[1] Defendant also admitted that he committed the attempted robbery of Domino's Pizza that had occurred on August 21, 2015. (Gov't Ex. 626.) The attempted robbery of Domino's Pizza was Count Two of the Indictment.

and then signed and dated each page of the formal interview, including the pages that reflected his admissions to the Pizza Hut and 7-Eleven robberies. (*Id.* at 202-5; June 29 Trial Tr. 164-66; Gov't Ex. 626.)

### B. Procedural Background

On November 9, 2015, a grand jury returned an indictment charging Defendant with three counts of interfering with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a). (ECF No. 1.) Defendant entered a plea of not guilty on all counts. (ECF No. 9.) On February 24, 2016, Defendant filed a Motion to Suppress Evidence through his former counsel, Kathleen Gaughen, Esq. (ECF No. 21.) On March 9, 2016, upon consideration of Ms. Gaughen's Amended Motion to Withdraw (ECF No. 23), an order was entered permitting Ms. Gaughen to withdraw as Defendant's attorney, and Anthony Kyriakakis, Esq. was appointed to represent Defendant. (ECF No. 27.) On April 18, 2016, Defendant filed a second Motion to Suppress Evidence through Mr. Kyriakakis.[2] (ECF No. 34.) On that same date, the Government filed a Motion to Admit Phone Call Recordings. (ECF No. 32.) Following a hearing, Defendant's suppression motion was denied by Memorandum and Order dated June 20, 2016, *see United States v. Smith*, No. 15-553, 2016 WL 3405450 (E.D. Pa. June 20, 2016), and the Government's motion to admit phone recordings was granted in part and denied in part (Recordings Order, ECF No. 68).[3]

[2] Mr. Kyriakakis incorporated Ms. Gaughen's Motion to Suppress Evidence into his own motion to suppress. (Suppress Mem. 1 n.1, ECF No. 27.) Because the issues raised in both motions were the same, we dismissed Ms. Gaughen's motion as moot.

[3] The authenticity of the telephone recordings was not in dispute. However, certain portions of telephone conversations and text messages between Defendant and other parties were contested by Defendant as being overly prejudicial. We concluded that the probative value of certain telephone conversations and text messages was "substantially outweighed by a danger of unfair prejudice." (Recordings Order 4.) Pursuant to Federal Rule of Evidence 403, the disputed

A jury trial was held beginning on June 27, 2016. On June 30, 2016, the jury returned a verdict finding Defendant guilty on Counts I and III. (ECF No. 73.) Defendant was found not guilty on Count II. (*Id.*) On August 12, 2016, Defendant filed the instant Motion. On August 18, 2016, the Government filed a Response in opposition. (Resp., ECF No. 85.)

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim P. 29(c)(2). When considering motions for judgment of acquittal, the court must view the evidence in the light most favorable to the prosecution, and must uphold the verdict if any rational trier of fact could have found guilt beyond a reasonable doubt given the available evidence. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Motions under Rule 29 are judged under a "highly deferential standard." *United States v. Carbo*, 572 F.3d 112, 119 (3d Cir. 2009). Challenges to the sufficiency of the evidence supporting a jury verdict "should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "[T]he verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (quoting *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012)). Defendant has the burden of proving that the Government's evidence was not sufficient to convict. *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990).

## III. DISCUSSION

### A. Count One (Pizza Hut Robbery)

---

conversations and text messages were excluded from evidence at trial. (*See* Recordings Order 4; June 28 Trial Tr. 7-8, 272-74.)

Defendant seeks judgment of acquittal on the Pizza Hut robbery charged in Count One. He asserts that there was insufficient evidence to prove that he robbed the restaurant. Specifically, he contends that the eyewitness testimony, video surveillance footage, and his confession to the police could not establish beyond a reasonable doubt that he committed the crime. The Government responds that Defendant's admission of guilt, together with the other corroborating evidence, is more than sufficient to support the jury's verdict. In reviewing the sufficiency of the evidence, "we review the evidence in the light most favorable to the [g]overnment as verdict winner." *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999).

Defendant's contention that the Government failed to establish that he was the individual who committed the Pizza Hut robbery is refuted by the record. At trial, the Government presented video surveillance footage from August 20, 2015, showing an armed black male, similar in build to Defendant, enter the Pizza Hut and point a gun at a young woman working behind the cash register. (Gov't Ex. 104.) The man was given money and he fled. (*Id.*) The woman behind the counter, Chardae Hall, testified at trial that the robber used a silver revolver that resembled the gun found in the black bag that Defendant was carrying and that Defendant had dropped shortly before his arrest. (June 28 Trial Tr. 23.)[4] In addition, a cell phone registered in Defendant's name contained internet searches that had been conducted hours before the robbery looking for Pizza Hut restaurants located in Philadelphia. (June 29 Trial Tr. 76, 82-83.) This evidence alone, when viewed in the light most favorable to the Government, could lead a rational jury to conclude that Defendant was guilty of robbing the Pizza Hut.

---

[4] Ms. Hall did not identify Defendant as the perpetrator of this crime. In fact, on the night of the incident, she identified another individual as the perpetrator. Obviously, the jury considered this in reaching its decision.

The Government, however, did not rest its case solely on the video surveillance footage, the testimony of Chardae Hall, and internet phone searches. Evidence of Defendant's guilt was further supported by the testimony of Philadelphia Police Detectives Ralph Domenic and James Waring, who interviewed Defendant the afternoon of his arrest. After Detective Domenic gave Defendant his *Miranda* rights, and assessed Defendant's understanding of the warnings through a series of formalized questions, Defendant admitted that he committed the Pizza Hut and 7-Eleven robberies. (June 28 Trial Tr. 187-92; June 29 Trial Tr. 160.) The detectives formalized Defendant's admissions in a written interview that Defendant signed and dated. This written statement included his confession that he had committed the Pizza Hut robbery. (June 28 Trial Tr. 193, 202-05; June 29 Trial Tr. 164-66; Gov't Ex. 626.)

Without citing to any case law, Defendant asserts that we must ignore Defendant's confession in its entirety. Specifically, he contends that because the jury found Defendant not guilty of the attempted robbery of the Domino's Pizza to which he had confessed (Count Two), it demonstrates that the jury rejected the veracity of the entire confession. Defendant's argument fails as a matter of law. *See, e.g., Yeager v. United States*, 557 U.S. 110, 112 (2009) ("[A] logical inconsistency between a guilty verdict and a verdict of acquittal does not impugn the validity of either verdict" (citation omitted)); *Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *United States v. Maury*, 695 F.3d 227, 266 (3d Cir. 2012) ("[T]he rule remains that, under *Dunn*, a defendant cannot challenge inconsistent jury verdicts if he was acquitted on one count and convicted on another."); *United States v. Dobson*, 380 F. App'x 170, 179 (3d Cir. 2010) ("Assuming *arguendo* that the verdicts returned by the jury are inconsistent, 'there is no requirement that a jury's verdict be consistent.'" (quoting *United States v. Mussare*,

405 F.3d 161, 167 (3d Cir. 2005)); *United States v. Uzzolino*, 651 F.2d 207, 213 (3d Cir. 1981) ("The general rule is that inconsistent verdicts will be left to stand as a hallmark to the jury's 'assumption of a power which they had no right to exercise, but to which they were disposed through lenity'" (quoting *Dunn*, 284 U.S. at 393)). Any rational trier of fact could have found Defendant guilty of the Pizza Hut robbery beyond a reasonable doubt given the compelling evidence against him. Defendant's argument is without merit.

**B. Count Three (7-Eleven Robbery)**

Defendant also seeks acquittal of the 7-Eleven robbery charged in Count Three. As to this Count, his assertion that no rational juror could find him guilty beyond a reasonable doubt is silly.

Here, not only did the Government present evidence that Defendant voluntarily and knowingly confessed to robbing the 7-Eleven (June 28 Trial Tr. 199; June 29 Trial Tr. 160; Gov. Ex. 626), it also presented evidence that Temple University security guards witnessed Defendant abandoning a black plastic bag that contained the instruments and fruits of the crime. (June 28 Trial Tr. 105, 140). The bag contained: one red baseball cap, one silver revolver, sixteen boxes of unopened Newport cigarettes, two cellphones, one red baseball cap, one black t-shirt, one lighter, $67 in U.S. currency, and one 7-Eleven plastic bag. (Gov't Exs. 619-21.) Evidence was presented demonstrating that the person who committed the 7-Eleven robbery wore a red baseball cap, brandished a silver revolver, and stole cash and Newport cigarettes. (June 28 Trial Tr. 51-52, 114, 135, 137; Gov. Ex. 105.) Moreover, evidence was presented that Defendant purchased online, through a PayPal account registered in his name, the silver revolver used in the robberies and recovered from the bag. (June 29 Trial Tr. 23-24.) The gun was delivered to the address at which he resided. (*Id.*) Furthermore, text messages sent by the user of one of the

cellphones found in the black plastic bag explicitly stated that on the night of the robbery the sender was about "2 rob 7 11 by myself." (Gov't Ex. 501(e).) The receiver of that text message was later identified as a person with whom Defendant had maintained a close relationship and continued to call after he had been arrested. (June 29 Trial Tr. 72.)

The evidence and testimony presented by the Government was not just sufficient, it was overwhelming. Considering this evidence in the light most favorable to the Government, it is clear that any rational trier of fact could have found Defendant guilty of the Pizza Hut and 7-Eleven robberies beyond a reasonable doubt. The fact that the jury chose to give Defendant a break on Count Two does not impugn the validity of the verdicts on Counts One and Three. Consistency is not required. The evidence was more than sufficient and the jury properly did its job. Accordingly, Defendant's Motion must be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Post-Trial Motion for Judgments of Acquittal will be denied.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**